

FILED

SEP 3 0 2008

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
              DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

CALIFORNIA PRO-LIFE COUNCIL,
INC.,

                                    NO. CIV S-00-1698 FCD GGH
          Plaintiff,

     v.                             MEMORANDUM AND ORDER

LIANE RANDOLPH, in her
official capacity as Chairman
of the Fair Political
Practices Commission, et al.,

          Defendants.

----oo0oo----

     This matter arises out of plaintiff California Pro-Life

Council, Inc.'s ("CPLC") motion for attorneys' fees and expenses

pursuant to 42 U.S.C. § 1988.  Plaintiff seeks a total of

$706,367.08 for lead counsel's attorneys' fees and $26,197.24 for

costs associated with the litigation in this case incurred by

lead counsel.  Plaintiff also seeks attorneys' fees and costs for

local counsel.  Defendants contend that the requested award

should be substantially reduced based upon the rates charged, the

1  costs of appeal, and the degree of success obtained by plaintiff.
2  For the reasons set forth below,[1] plaintiff's motion is GRANTED
3  in part and DENIED in part.

4  **BACKGROUND**

5      Litigation in this matter has been ongoing for over eight
6  years.  On August 8, 2000, CPLC filed its initial complaint with
7  this court.  The essence of CPLC's operative ten-count complaint
8  ("complaint") is that Cal. Gov't Code §§ 82031 and 82013(a) and
9  (b) Cal. Code Regs. tit. 2, §§ 18225(b) and 18215(b), violate
10 CPLC's First and Fourteenth Amendment rights by subjecting them
11 to onerous reporting requirements for engaging in express
12 advocacy of ballot measures.  Three of these claims were
13 dismissed by stipulation of the parties.  By orders filed on
14 October 24, 2000 and January 22, 2002, this court dismissed the
15 remainder of plaintiff's claims on various grounds.

16     The Ninth Circuit affirmed this court's dismissal of Counts
17 1 and 3, holding that CPLC "does not have standing to argue that
18 the definition of 'independent expenditure' is unconstitutionally
19 vague as applied to its candidate advocacy."  California Pro-Life
20 Council, Inc. v. Getman, 328 F.3d 1088, 1096 (9th Cir. 2003).
21 With respect to Counts 5 and 10, the court held that CPLC could
22 challenge the allegedly vague definition of "independent
23 expenditure" as it related to CPLC's express ballot measure
24 advocacy, but concluded that the definition, as narrowly defined
25 by the California appellate court in Governor Gray Davis

26

27     [1]    Because oral argument will not be of material
   assistance, the court orders these matters submitted on the
28 briefs.  E.D. Cal. Local Rule 78-230(h).

1  Committee v. American Taxpayer Alliance, 102 Cal. App. 4th 449
2  (2002), was not unconstitutionally vague.  Getman, 328 F.3d at
3  1093, 1100.  Lastly, the Ninth Circuit addressed Counts 2, 4, and
4  6, "CPLC's more general challenge to the PRA's regulation of
5  ballot measure advocacy."  Id. at 1100.  The court concluded that
6  the PRA's disclosure provisions burden protected First Amendment
7  speech and therefore, must satisfy strict scrutiny.  The Circuit
8  court remanded, stating that it was for this court to determine
9  in the first instance whether the state's interest was in fact
10  compelling, and whether the challenged PRA provisions were
11  narrowly tailored to advance that interest.  Id. at 1107.

12       On remand, the parties filed cross-motions for summary
13  judgment.  By order dated February 25, 2005, this court denied
14  CPLC's motions for summary judgment and granted defendants'
15  motion for summary judgment.  The Court held that (1) California
16  has a compelling information interest in the PRA's disclosure
17  provisions; and (2) the record-keeping, reporting, and
18  organizational obligations were narrowly tailored to that
19  compelling interest.  CPLC appealed the judgment.

20       On November 14, 2007, the Ninth Circuit affirmed in part,
21  reversed in part, and remanded.  California Pro-Life Council,
22  Inc. v. Randolph, 507 F.3d 1172 (9th Cir. 2007).  The Ninth
23  Circuit concluded that defendants had met their burden of
24  demonstrating (1) a compelling interest in the disclosure of
25  funding sources for express ballot measure advocacy; and (2) that
26  the definition of "contribution" is narrowly tailored to that
27  compelling interest.  Id. at 1183-87.  However, the Ninth Circuit
28  held that defendants failed to demonstrate that the PRA's

3

1  imposition of the "full panoply of regulations that accompany
2  status as a political committee under the Act," which included
3  mandated registration, formal termination procedures, periodic
4  reporting, and heightened recordkeeping requirements, on a group
5  like CPLC were narrowly tailored to that same interest.  Id. at
6  1187-89.  As such, the Ninth Circuit's held that CPLC, and groups
7  like CPLC, cannot be required to comply with political committee-
8  like requirements beyond disclosure of the identities of persons
9  funding independent expenditures made by CPLC to support or
10  oppose qualification or passage of ballot measures.  Randolph,
11  507 F.3d at 1187-90.

12       Consistent with the Ninth Circuit's decisions, by order
13  filed March 12, 2008, this court held that CPLC was entitled to
14  judgment in its favor on Count Six and permanently enjoined
15  defendant from enforcing additional political committee-like
16  requirements against CPLC and groups like CPLC.  (Mem. And Order
17  [Docket # 204], filed Mar. 12, 2008, at 7.)  As such, nine of
18  plaintiff's original ten claims for relief were ultimately
19  dismissed.  (See id. at 5-7.)  However, plaintiff was successful
20  in obtaining declaratory and injunctive relief on one of its
21  claims.

22                            **STANDARD**

23       The Civil Rights Attorneys' Fees Awards Act of 1976 states
24  in relevant part:

25            In any action or proceeding to enforce a provision of
              . . . [42 U.S.C. § 1983] . . . the court, in its
26            discretion, may allow the prevailing party, other than
              the United States, a reasonable attorney's fee as part
27            of the costs.

28

4

42 U.S.C. § 1988(b) (West 2008).  "Section 1988 was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts."  Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 559 (1986) (citing Hensley v. Eckhart, 461 U.S. 424, 429 (1983).  As such, a prevailing party "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust."[2]  Hensley, 461 U.S. at 429 (internal quotations omitted).  District courts are given discretion in calculating the amount of attorneys' fees.  Id. at 437.  However, the district court must make clear its reasons for a certain fee award, especially "when an adjustment is requested on the basis of either the exceptional or limited nature of relief obtained by the plaintiff."  Id.

The party seeking fees bears the burden of documenting and substantiating fees, and those fees must be reasonable and necessary to the litigation.  Id. at 434.  In determining the award, courts typically use the "lodestar" method to calculate attorneys' fees.  Widrig v. Apfel, 140 F.3d 1207, 1209 (9th Cir. 1998).  Under this method, the court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate.  Hensley, 461 U.S. at 433 ("This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.").  The district court should exclude from this initial calculation hours that it deems were not reasonably expended.  Id. at 434.

---

[2]    Defendants do not dispute that plaintiff is a prevailing party in this litigation.

1   There is a strong presumption that the lodestar amount is
2   reasonable, though the court may adjust the lodestar figure if
3   various factors overcome that presumption of reasonableness.
4   Fischer v. SJB-P.D., Inc., 214 F.3d 1115, 1119 (9th Cir. 2000).
5   The following twelve factors are generally used to adjust a fee
6   award:

7       (1) the time and labor required, (2) the novelty and
        difficulty of the questions involved, (3) the skill
8       requisite to perform the legal service properly, (4)
        the preclusion of other employment by the attorney due
9       to acceptance of the case, (5) the customary fee, (6)
        whether the fee is fixed or contingent, (7) time
10      limitations imposed by the client or the circumstances,
        (8) the amount involved and the results obtained, (9)
11      the experience, reputation and ability of the
        attorneys, (10) the 'undesirability' of the case, (11)
12      the nature and length of the professional relationship
        with the client, and (12) awards in similar cases.
13

14  Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir.
15  1975); E.D. Cal. L.R. 54-293.  The factor of "results obtained"
16  is "particularly crucial where a plaintiff is deemed 'prevailing'
17  even though he succeeded on only some of his claims for relief."
18  Hensley, 461 U.S. at 434.

19                          **ANALYSIS**

20  **A.    Reasonable Hourly Rates**

21  Generally, a reasonable hourly rate is set based on the
22  prevailing market rates in the legal community of the forum
23  district.  Blum v. Stenson, 465 U.S. 866, 895 (1984); Gates v.
24  Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1993).  The fee
25  applicant bears the burden of producing evidence that the
26  requested rate is commensurate with the rates in the community
27  for similar services by attorneys of "reasonably comparable
28  skill, experience and reputation."  Blum, 465 U.S. at 895 n. 11;

6

1   Trevino v. Gates, 99 F.3d 911, 924-25 (9th Cir. 1996); Davis v.
2   City of San Francisco, 976 F.2d 1536, 1545 (9th Cir. 1992)(a
3   reasonable hourly rate should be determined "by reference to the
4   fees that private attorneys of an ability and reputation
5   comparable to that of prevailing counsel charge their paying
6   clients for legal work of similar complexity").  Determination of
7   a reasonable hourly rate is not made merely by reference to rates
8   actually charged by the prevailing party or rates charged in the
9   prevailing party's locale.  See White v. City of Richmond, 713
10  F.2d 458, 461 (9th Cir. 1983).  Rather, the rate assessed is
11  based on the prevailing rate in the relevant community *for*
12  *similar work.*  Chalmers, 796 F.2d at 1211; Blum, 465 U.S. at 895
13  n. 11.  Generally, the relevant community is the forum in which
14  the district court sits.  Davis v. Mason County, 927 F.2d 1473,
15  1488 (9th Cir. 1991).  However, rates outside the forum may be
16  used "if local counsel was unavailable, either because they are
17  unwilling or unable to perform because they lack the degree of
18  experience, expertise, or specialization required to handle
19  properly the case."  Gates v. Deukmejian, 987 F.2d 1392, 1405
20  (9th Cir. 1992).
21      The law firm of Bopp, Coleson & Bostrom served as lead
22  counsel for plaintiff.  (Decl. of James Bopp, Jr. ("Bopp Decl.")
23  [Docket #208], filed Apr. 11, 2008, ¶ 24.)  Plaintiff seek the
24  following fee rates for lead counsel's work in this case:

| James Bopp, Jr. | $385 per hour |
| Barry A. Bostrom | $325 per hour |
| Richard E. Coleson | $325 per hour |

| Glenn M. Willard | $325 per hour |
| Eric C. Bohnet | $290 per hour |
| Heidi K. Abegg | $290 per hour |
| James R. Mason | $290 per hour |
| B. Chad Bungard | $275 per hour |
| Raeanna S. Moore | $275 per hour |
| J. Aaron Kirkpatrick | $265 per hour |
| Justin David Bristol | $265 per hour |
| Benjamin T. Barr | $265 per hour |
| Jeffrey P. Gallant | $265 per hour |
| Clayton J. Callen | $190 per hour[3] |

The principal attorneys assigned to the case were Richard E.
Coleson ("Coleson") and B. Chad Bungard ("Bungard"). (Id. ¶ 24.)
However, in order to complete the work required for this case,
projects were divided among several attorneys. (Id.)

James Sweeney ("Sweeney") and Tahnya Ballard ("Ballard")
served as local counsel. (Decl. of James F. Sweeney in Supp. of
Mot. for Attorneys' Fees ("Sweeney Decl.") [Docket #212], filed
Apr. 14, 2008, ¶ 1; Decl. of Tahnya Ballard ("Ballard Decl.")
[Docket #210], filed Apr. 11, 2008, ¶ 3.) Local counsel seeks
the following fee rates:

| James F. Sweeney | $375 per hour |
| Tahnya Ballard | $250 per hour |

(Sweeney Decl. ¶ 9; Ballard Decl. ¶ 8.)

---

[3]   While the Bopp declaration asserts that Callen's rate
in the local market would be $195 per hour, the actual rate
charged for his work in the breakdown submitted to the court is
$190 per hour. (Ex. C to Bopp Decl.)

1   In support of their requested fee rates, plaintiff submit
2   the declaration of Charles H. Bell, Jr. ("Bell"), a senior
3   partner in the law firm of Bell, McAndrews, Hiltachk,& Davidian
4   LLP, a law firm which practices in Sacramento and specializes in
5   campaign, election, and administrative law at all levels of
6   government.   (Decl. of Charles H. Bell, Jr. ("Bell Decl.")
7   [Docket #209], filed Apr. 11, 2008, ¶¶ 4, 5.)   Bell asserts that
8   his law firm uses the following rate table, which has been
9   established in light of prevailing rates within the Sacramento
10  metropolitan area:

| Associates: 1-3 years | $150-$170 per hour |
|---|---|
| Associates: 3+ years | $170-$230 per hour |
| Partners: to 10 years | $230-$260 per hour |
| Partners: 10+ years | $260-$280 per hour |
| Senior Partners: | $280-$400 per hour |
| Law Clerks: | $100-310 per hour |

17  (Id. ¶ 6.)   The actual rate ascribed to an attorney within the
18  appropriate range depends on his personal level of expertise in
19  the subject area and the arena in which the services are being
20  rendered.   (Id.)   Bell also asserts that he has reviewed the
21  declarations regarding plaintiff's' counsel's work in this case,
22  and it is his opinion that the rates charged are fair and
23  reasonable in light of the local market.   (Id. ¶ 7.)

24         **1.   Bopp and Ballard's Requested Rates**

25  Defendants do not challenge the requested hourly rate of
26  James Bopp, Jr. ("Bopp"), stating that it is within the range of
27  applicable community rates set forth by Bell in his declaration.
28  (Def.'s Opp'n to Pls.' Mot. for Attorney's Fees and Expenses

1  ("Opp'n") [Docket #215], filed May 7, 2008, at 17 n. 14.)
2  Defendants also do not challenge the requested hourly rate of
3  Ballard.  (Id. at 17 n.15.)  Having reviewed the submissions of
4  the parties and the relevant case law, the court finds that the
5  fee rates of $385 per hour for Bopp and of $250 per hour for
6  Ballard are reasonable.

7       **2.   Sweeney's Requested Rate**

8       Defendants contend that Sweeney's hourly rate should be
9  reduced to $250 per hour because it is the rate claimed by
10  current local counsel, Ballard, and because it has repeatedly
11  been found to be a reasonable rate for an experienced attorney in
12  Sacramento.  (Id.)  With its reply,[4] plaintiff submits a
13  supplemental declaration of Bell, which provides that attorneys
14  with Sweeney's level of experience, knowledge, background, and
15  expertise routinely receive between $350 and $400 per hour.
16  (Supplemental Decl. of Charles H. Bell in Supp. of Pls.' Mot. for
17  Attorneys' Fees ("Suppl. Bell. Decl.") [Docket #220], filed May
18  16, 2008, ¶ 11; see also Sweeney Decl. ¶¶ 2-7.)  Moreover, this
19  rate is within the range of applicable community rates set forth
20  by Bell in his original declaration, which defendants implicitly
21  concede are appropriate.  (See Opp'n at 16-18) (applying the
22  rates set forth in the Bell declaration in order to arrive at
23  proposed alternative reasonable rates).  While defendants assert
24  that there was no evidence submitted in plaintiff's moving papers
25  regarding the reasonable rate for a sole practitioner or member
26  of a small law partnership in Sacramento, defendants also fail to
27
28      [4]   Defendants did not raise any objection to the court's
    consideration of this evidence.

proffer any evidence or argument that an attorneys' hourly rate
should be adjusted because he is affiliated with a small law
firm.  Rather, the supplemental Bell declaration, in conjunction
with the Sweeney declaration, support plaintiff's contention that
$375 per hour is a reasonable fee rate for Sweeney's work in this
litigation.

### 3.   Compensation at Current Experience Levels

While defendants do not oppose the application of current
community rates, defendants argue that plaintiff's requested
rates for the remainder of counsel are unreasonable because
plaintiff is requesting that such counsel be compensated based on
their current experience level, as opposed to their experience
level when they were working on the case as long as seven to nine
years ago.  Defendants contend that this method of calculation
results in a "windfall" to plaintiff.  (Opp'n at 16 n.12.)
Plaintiff argues that such a methodology does not result in a
windfall, but rather accounts for both inflation and loss of the
use of funds.

The Supreme Court and the Ninth Circuit have established
that it is within the district court's discretion "to compensate
prevailing parties for any delay in the receipt of fees by
awarding fees at current rather than historic rates in order to
adjust for inflation and the loss of funds."  Gates, 987 F.2d at
1406 (collecting cases) (emphasis added); see also Missouri v.
Jenkins, 491 U.S. 274, 283-84 (1989); Barjon v. Dalton, 132 F.3d
496, 502-03 (9th Cir. 1997) ("[T]he district court may choose to
apply either the attorney's current rates to all hours billed or
the attorney's historic rates plus interest."); In re Washington

11

1 | Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1305 (9th Cir.
2 | 1994) ("Full compensation requires charging current rates for all
3 | work done during the litigation, or by using historical rates
4 | enhanced by an interest factor."). The Supreme Court has
5 | reasoned that an appropriate adjustment for delay in payment was
6 | within the contemplation of § 1988 because "compensation received
7 | several years after the services were rendered . . . is not
8 | equivalent to the same dollar amount received reasonably promptly
9 | as the legal services are performed." Jenkins, 491 U.S. at 384
10 | (approving an adjustment "whether by the application of current
11 | rather than historic hourly rates or otherwise"). Subsequently,
12 | the Ninth Circuit has noted that "[a] fee award at current rates
13 | is intended to compensate prevailing attorneys for lost income
14 | they might have received through missed investment opportunities
15 | as well as lost interest." Gates, 987 F.2d at 1406.

16 |     While it is well established that an adjustment to fees
17 | should account for both inflation and lost interest, the Ninth
18 | Circuit has also observed that "[a] court may . . . refuse to use
19 | current hourly rates on the grounds that increased rates reflect
20 | the attorney's increased knowledge and experience, not merely
21 | inflation." Burgess v. Premier Corp., 727 F.2d 826, 841 (9th
22 | Cir. 1984). Therefore, it is within the district's court
23 | discretion to adjust the attorneys' fee award in order to
24 | compensate for both inflation and lost interest, but such
25 | adjustment should not compensate for an attorney's increased
26 | skills gained through experience.

27 |     A review of the relevant cases cited by plaintiff and found
28 | by the court, however, reveals an ambiguity with respect to the

12

Ninth Circuit's definition of current rates.  It is unclear
whether "current rates" refers (1) to rates currently charged in
the relevant community for attorneys of the same experience level
that the fee-seeking attorneys were when they worked on the
litigation; or (2) to rates currently charged in the relevant
community for attorneys of the experience level that the fee-
seeking attorneys currently are at the time they are seeking the
fees.

       Paying counsel at current values based on their experience
level when they performed the work would compensate for
inflation.  See Bouman v. Block, 940 F.2d 1211, 1235 (9th Cir.
1991); see also Miller v. Holzmann, -- F. Supp. 2d --, Civ No.
95-1231, 2008 WL 3319032, at *13 (D.D.C. Aug. 12, 2008.)
However, it does not take into account the lost interest or
economic opportunities missed over the last eight years that this
case was litigated by lead counsel on a contingency fee basis.
(See Bopp Decl. ¶ 21.)  Yet, paying counsel at the current rates
for their current experience levels would produce a windfall to
plaintiff's counsel by adjusting fees for an attorney's increased
skills gained through experience.  Leroy v. Houston, 831 F.2d
576, 584-85 (9th Cir. 1987); Chalmers v. City of Los Angeles, 676
F. Supp. 1515, 1526 (C.D. Cal. 1987) ("An increase in an
attorney's hourly rate over time more likely reflects an
attorneys [sic] increased experience and skill as a lawyer than
some change in the time-value of money."); see Burgess, 727 F.2d

13

1 | at 841.  Contra Miller, 2008 WL 3319032, at *13.[5]  The court
2 | finds that the application of a multiplier to account for lost
3 | interest over the course of litigation will more accurately
4 | reflect the proper amount of fees.  See Chalmers, 676 F. Supp. at
5 | 1527 ("The historic market rate of interest . . . is a more
6 | relevant factor in measuring loss from delay.").

7 | Therefore, the court will apply the rates currently charged
8 | in the relevant community for attorneys of the same experience
9 | level that the fee-seeking attorneys were when they worked on the
10 | litigation.  At the conclusion of the lodestar calculation, the
11 | court will increase the total fees by a multiplier of 1.15 to
12 | account for lost interest and opportunities incurred over the
13 | course of the eight year litigation.[6]

14 | **4.    Approved Reasonable Rates**

15 | Defendants also argue that plaintiff's requested rates are
16 | unreasonable because they are not in line with those set forth in
17 | the Bell declaration.  The court agrees.

18 | The court finds that the range of rates set forth in the
19 | Bell declaration are the prevailing rates in Sacramento for
20 | similar work by attorneys of reasonably comparable skill,

21 |

22 | [5]    Such a windfall is exemplified in this case where a large part of the work was performed from 1999 to 2001 by B. Chad Bungart, an associate admitted to the bar in 1999.  Plaintiff contends that Bungard should be paid at the rate of $275 per hour, instead of $170 per hour, the high end of the range for a 1-3 year associate under the Bell declaration.  This increase overcompensates for lost interest occasioned by the length of litigation.

26 | [6]    The court finds that a 15% increase is reasonable to account for lost interest and opportunities during the course of the litigation under the facts of this case.  However, the court does not apply the multiplier to the fees and costs incurred relating to the motion for attorneys' fees.  (Exhibit B.)

14

experience and reputation.[7]  The court acknowledges the
complexity of the issues raised in this case, the requisite skill
required to perform the legal services, and the experience,
reputation and ability of the attorneys; thus, the court applies
the rates at the high end of the applicable range.

In determining the applicable range, the court looks to the
date when counsel was admitted to the bar and assumes that such
admission was at the beginning of that year.  For example,
applying the rate table set forth in the Bell declaration, an
associate admitted to the bar in 1999 would be compensated at the
rate of $170 per hour for work performed between 1999 through
2001.  For any work performed from 2001 through 2008, that
associate would be compensated at the rate of $230 per hour.
Further, while, aside from Bopp, there are no "partners" at the
law firm of Bopp, Coleson & Bostrom, the court looks to the
billing rates for partners with ten or more years of experience
when assessing the rates of "Senior Associates" Richard E.
Coleson and Barry A Bostrom.  (See Bopp Decl. ¶ 13) ("[A]ttorneys
with partner-level experience have the tile of Senior Associate
with my firm.").

---

[7]     The court does not consider the Altman Weil statewide
survey submitted by plaintiff because this reflects statewide
billing rates, not the prevailing billing rates in Sacramento.
See Petroleum Sales, Inc. v. Valero Ref. Co., No. C. 05-3526,
2007 WL 2694207, at *5 (N.D. Cal. Sept. 11, 2007) (rejecting
consideration of the Altman Weil survey because it is "too
broad"); S.W. Ctr. for Biological Diversity v. Bartel, No. 98-CV-
2234, 2007 WL 2506605, at *4 (S.D. Cal. Aug. 30, 2007) (rejecting
fee schedule set forth in Altman Weil survey because it averages
rates over a large region); Grunseich v. Barnhart, 439 F. Supp.
2d 1032, 1034 (C.D. Cal. 2006) (rejecting reliance on Altman Weil
survey).

1    As such, and for the reasons set forth above, the court

2  finds that the following rates are reasonable for all counsel in

3  this case:

| James Bopp, Jr. | $385 per hour |
|---|---|
| Barry A. Bostrom | $280 per hour |
| Richard E. Coleson | $280 per hour |
| Glenn M. Willard | $230 per hour |
| Eric C. Bohnet | $230 per hour |
| Heidi K. Abegg | $230 per hour |
| James R. Mason | $230 per hour |
| B. Chad Bungard | $170 per hour |
| Raeanna S. Moore | $170 per hour (1999) |
|  | $230 per hour (2000-2008) |
| J. Aaron Kirkpatrick | $170 per hour |
| Justin David Bristol | $170 per hour |
| Benjamin T. Barr | $170 per hour |
| Jeffrey P. Gallant | $170 per hour (2001-2003) |
|  | $230 per hour (2004-2008) |
| Clayton J. Callen | $170 per hour |
| James F. Sweeney | $375 per hour |
| Tahnya Ballard | $250 per hour |

**B.   Costs on Appeal**

22    In both remand orders, the Ninth Circuit ordered that

23  "[e]ach party is to bear its costs on appeal." <u>Randolph</u>, 507

24  F.3d at 1190; <u>Getman</u>, 328 F.3d at 1107 ("Each party shall bear

25  its own costs on appeal."). As such, defendants contend that

26  plaintiff's requested fees should be reduced because it is not

27  entitled to costs on appeal. Specifically, defendants assert

28  that, under the plain language of § 1988, "costs" include

16

attorneys' fees attributable to the appeal and are thus precluded by the Ninth Circuit's orders.  Plaintiff contends that costs refers only to the costs set forth in Rule 39 of the Federal Rules of Appellate Procedure.

Rule 39(a) sets forth the rules regarding parties against whom costs may be assessed unless the law or court orders provide otherwise.  In ordering that each party was to bear its own costs on appeal, the Ninth Circuit was excising its discretion pursuant to Rule 39(a).  Section 1988(b) provides, in relevant part:

> In any action or proceeding to enforce a provision of section[ ] . . . 1983 . . . of this title, . . . the court, in its discretion, may allow the prevailing party, . . . *a reasonable attorney's fee as part of the costs* . . . .

42 U.S.C. § 1988(b) (emphasis added).  The Ninth Circuit has not directly addressed the relationship between costs under Rule 39 and attorneys' fees under section 1988.  Specifically, the Ninth Circuit has not addressed whether "costs" on appeal includes attorneys' fees under § 1988.

The Ninth Circuit has recently held that Rule 39 was not intended "to create a uniform definition of 'costs,' exclusive of attorneys' fees."  <u>Azizian v. Federated Dep't Stores, Inc.</u>, 499 F.3d 950, 958 (2007); <u>see</u> <u>Adsani v. Miller</u>, 139 F.3d 67, 75 (2d Cir. 1998) ("Rule 39 has no definition of the term "costs" but rather defines the circumstances under which costs should be awared."); <u>see also</u> <u>Pedraza v. United Guar. Corp.</u>, 313 F.3d 1323, 1329-30 (11th Cir. 2002) ("Under no fair reading of the simple, unambiguous language of Rule 39 can an exportable definition of 'costs' be perceived . . . .").  <u>But see</u> <u>McDonald v. McCarthy</u>, 966 F.2d 112, 116 (3d Cir. 1992) ("Rule 39 . . . is not silent as

17

to the definition of costs."); <u>Robinson v. Kimbrough</u>, 652 F.2d 458, 463 (5th Cir. 1981) ("Rule 39 . . . refers only to the usual costs of appeal."). In <u>Azizian</u>, the Ninth Circuit was confronted with the issue of whether "costs on appeal," as used in Federal Rule of Appellate Procedure 7, included all expenses defined as "costs" by an applicable fee-shifting statute, including attorneys' fees. <u>Id.</u> at 953. The applicable fee-shifting statute before the court was Section 4 of the Clayton Act, which provides that an injured party shall recover "cost of suit, including a reasonable attorney's fee." <u>Id.</u> at 959. The court found that neither Rule 7 nor Rule 39 provided an exclusive definition of costs. <u>Id.</u> at 958. In particular, the <u>Azizian</u> court noted that Rule 7 was silent with respect to the definition of costs and that "[t]he discrepancy between the use of the term 'costs' in Rule 39 and its use in Rule 38 strongly suggests that the rules' drafters did not intend for Rule 39 to create a uniform definition . . . ." <u>Id.</u> Further, the court read the language of 39(e) to mean that "the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal." As such, the court held that because there was no exclusive definition of costs in the Rules and because the plain language of the applicable fee-shifting statute included reasonable attorneys' fees as part of "costs," the term "cost" in Rule 7 included attorneys' fees if such fees were eligible to be recovered. <u>Id.</u> at 959-960 (determining that appellant did not need to secure a bond for attorneys' fees because appellee was not eligible to recover such fees under the statute).

18

1    Where an applicable rule does not define the term "costs"
2  and the underlying fee-shifting statute does, the court must rely
3  upon the definition set forth in the statute.  Marek v. Chesny,
4  473 U.S. 1, 8-9 (1985).  In Marek, the Supreme Court held that
5  the term "costs" in Federal Rule of Civil Procedure 68 includes
6  attorneys' fees under § 1988.  Id. at 9.  The Court reasoned that
7  by not defining the term "costs" in Rule 68, the drafters
8  "intended to refer to all costs properly awardable under the
9  relevant substantive statute or other authority."  Id.  The Court
10  also noted that "Congress expressly included attorney's fees as
11  'costs' available to a plaintiff in a § 1983 suit."  Id.  "Thus,
12  absent congressional expressions to the contrary, where the
13  underlying statute defines 'costs' to include attorney's fees,"
14  the Supreme Court concluded that such fees are to be included as
15  costs for purposes of a rule that does not explicitly define that
16  term.  Id.

17    In this case, the Ninth Circuit ordered that each party
18  shall bear their own costs on appeal pursuant to Rule 39.  The
19  Ninth Circuit did not define what they meant by costs.  Further,
20  as set forth above, Rule 39 does not set forth a uniform
21  definition of costs nor a definition of costs that is exclusive
22  of attorneys' fees.  Azizian, 499 F.3d at 958.  Thus, the court
23  must look to the underlying fee-shifting statute.  Marek, 499
24  U.S. at 9.  As the Supreme Court noted in Marek, the plain
25  language of § 1988 demonstrates Congress' intent to include
26  attorneys' fees as part of the costs of suit.  Id.  Therefore,
27  the Ninth Circuit's order pursuant to Rule 39 that each party
28  shall bear its own costs on appeal includes attorneys' fees under

§ 1988.  As such, plaintiff may not seek attorneys' fees incurred in the process its appeals.

In its reply, plaintiff cites to the Third Circuit's decision in <u>McDonald v. McCarthy</u>, which held that an award of attorneys' fees was not precluded by the Court of Appeals' order that each party bear its own costs on appeal.  966 F.2d at 118. The <u>McDonald</u> court based its analysis on its finding that "Rule 39 defines costs as including normal administrative costs" and does not provide "for the assessment of attorneys' fees."  <u>Id.</u> The court distinguished the Supreme Court's decision in <u>Marek</u> on the basis that, unlike Rule 39, Rule 68 did not have a definition of costs.  <u>Id.</u> at 116.  Rather, the Third Circuit found that the issue before it was more akin to that before the Supreme Court in <u>Roadway Express, Inc. v. Piper</u>, where the Court held that attorneys' fees were not recoverable because they were not included in the statutory definition of costs set forth in 28 U.S.C. § 1927.  <u>Id.</u> (citing <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752 (1980)).  The court also emphasized that § 1988 provides that attorneys' fees "<i>may</i>" be awarded as part of costs.  <u>Id.</u> at 118.  Therefore, the court concluded that § 1988's definition of costs should not be "superimposed" upon Rule 39's definition.

The Third Circuit's decision in <u>McDonald</u> is unpersuasive to the court. First, the basis of the <u>McDonald</u> court's reasoning is contrary to Ninth Circuit precedent regarding the interpretation of Rule 39.  <u>Azazian</u>, 499 F.3d at 958.  Second, because the Ninth Circuit has held that Rule 39 does not create a uniform definition of costs, this issue in this case is more akin to that before the Supreme Court in <u>Marek</u>, not in <u>Roadway</u>.  Finally, the

1 | court disagrees with the Third Circuit's emphasis on the term
2 | "may" in § 1988.  The language of the statute provides that "the
3 | court, in its discretion, *may* allow the prevailing party, . . . a
4 | reasonable attorney's fee as part of the costs . . . ."  42
5 | U.S.C. § 1988.  A plain reading of the statute requires that
6 | "may" refers to the courts discretion to award attorneys' fees.
7 | However, it does not support an interpretation that the court may
8 | or may not consider attorneys' fees as part of the costs.
9 | Further, such an interpretation would be contrary to the Supreme
10 | Court's holding in Marek that Congress expressly included
11 | attorneys' fees as costs.  473 U.S. at 9.

12 | Plaintiff also argues that costs should not be denied in
13 | this case because the Ninth Circuit granted transfer to this
14 | court pursuant to Ninth Circuit Rule 39-1.8, which provides that
15 | a party who is or may be eligible for fees may transfer
16 | consideration of fees on appeal to the district court.  (Order
17 | [Docket #191], filed Dec. 14, 2007.)  In essence, plaintiff
18 | contends that the Ninth Circuit's transfer order amounts to a
19 | determination that it should be awarded attorneys' fees.  The
20 | court does not read the transfer order so broadly.  Rather, the
21 | Ninth Circuit's order transferred the case for "consideration" of
22 | attorneys' fees on appeal.  (Id.)  Such consideration includes
23 | whether fees should be awarded at all.  This is consistent with
24 | the language of Ninth Circuit Rule 39-1.8, which allows for a
25 | motion to transfer to be made by "[a]ny party who is or *may* be
26 | eligible for attorneys fees on appeal."  Moreover, the Ninth
27 | Circuit's remand orders in this case are distinguishable from
28 | other orders where it has explicitly found that attorneys' fees

1   on appeal should be awarded pursuant to § 1988, even if other
2   appeal costs are borne by each party.  See Merritt v. Mackey, 932
3   F.2d 1317, 1325 (9th Cir. 1991) ("Each party will bear its own
4   share of the regular costs on appeal. As prevailing party in
5   this litigation, Merritt is entitled to an award of fees on
6   appeal pursuant to 42 U.S.C. § 1988 . . . .")[8]; see also Am.
7   Jewish Congress v. City of Beverly Hills, 90 F.3d 379, 386 (9th
8   Cir. 1996) (granting the request for attorneys' fees on appeal
9   pursuant to § 1988 and remanding to the district court for
10  determination of the proper amount).

11      Therefore, because the court holds that the Ninth Circuit's
12  remand orders directing that each party would bear its own costs
13  on appeal includes attorneys' fees under § 1988, the court
14  reduces the requested attorneys' fees to the extent they arise
15  out of counsel's work on appeal.  (See Appendix A, B.)[9]

16  **C.   Reductions for Limited Success**

17      Where a plaintiff is deemed the prevailing party, even
18  though he succeeded on only some of his claims for relief, the
19  court must take into account the partial or limited success in

20

21      [8]   The court notes that nothing in its analysis would
22  preclude the Ninth Circuit from exempting attorneys' fees from
    its orders regarding costs under Rule 39.  In such a case, the
23  court's explicit orders would define the term costs, and the
    court need not look to the underlying statute for its definition.

24      [9]   Appendix A and B reflect only the hours and costs
25  expended by plaintiff's lead counsel.  The court has reviewed the
    hours and costs expended by plaintiff's local counsel.  Sweeney
    did not incur any fees, costs, or expenses related to plaintiff's
26  appeals.  Ballard expended 1.4 hours related to plaintiff's
    appeal between March 1, 2005 and November 15, 2007.  (Ex. A to
27  Ballard Decl.)  As such, the court does not award Ballard fees
    for these hours.  Ballard did not incur any costs or expenses
28  related to plaintiff's appeal.

1 awarding attorneys' fees.  Hensley, 461 U.S. at 434-40 (1983);
2 Gates, 987 F.2d at 1403-04.  "A fee based on the hours expended
3 on the litigation as a whole may be excessive if a plaintiff
4 achieves only partial or limited success."  Farrar v. Hobby, 506
5 U.S. 103, 104 (1992)  If there are two distinctly different
6 claims for relief based upon different facts or legal theories
7 and the plaintiff prevails on only one of those claims, the
8 plaintiff should not recover fees for work on the unsuccessful
9 claim.  Id.  However, if plaintiff brings claims that involve a
10 common core of facts or are based on related legal theories, the
11 court cannot treat those claims as distinct and must "focus on
12 the significance of the overall relief obtained by the plaintiff
13 in relation to the hours reasonably expended on the litigation."
14 Id. at 435.

15      When balancing the relief obtained against the hours
16 expended, "[t]he result is what matters."  Id.; see Gates, 987
17 F.2d at 1404.  If a plaintiff obtained excellent results, the fee
18 award should not be reduced simply because the plaintiff failed
19 to prevail on every claim brought in the litigation.  Id.  Nor
20 should the court necessarily reduce the lodestar because the
21 prevailing party did not receive the type of relief it requested.
22 Gates, 987 F.2d at 1404 (citations omitted).  However, if a
23 plaintiff obtained a result that was favorable, but only
24 partially successful, full compensation for all the hours
25 expended in litigation may be excessive.  Hensley, 461 U.S. at
26 436.  While there is not precise rule or formula for making these
27 determinations, the Ninth Circuit has noted that the "favored
28 procedure" is for the court to adjust attorneys' fees to take

23

into account limited success in the "initial determination of hours reasonably expended," and "not in subsequent adjustments to the lodestar figure." Gates, 987 F.2d at 1404 (citing Corder v. Gates, 947 F.2d 374, 378 (9th Cir. 1991); Cabrales v. County of Los Angeles, 864 F.2d 1454, 1464 (9th Cir. 1988)).

**1.   Issues Litigated Prior to the First Appeal**

In the initial motions before the court and in its first appeal before the Ninth Circuit, plaintiff attacked the constitutionality of California's campaign finance disclosure laws on essentially two bases: (1) the definition of independent expenditure; and (2) the ability of California to regulate ballot-measure advocacy. See Getman, 328 F.3d 1088; see also Mem. & Order [Docket #95], filed Jan. 22, 2002. Plaintiff did not prevail on its claims arising out of the definition of independent expenditure. See Getman, 328 F.3d at 1096-1100. However, the Ninth Circuit found that while California may regulate ballot-measure advocacy, the State must also establish whether it has a compelling informational interest satisfying such disclosures. Id. at 1100-07.

Plaintiff concedes that the independent expenditure claims was a separate and distinct claim from the ballot advocacy claims that thus, it should not be awarded fees for work arising out of litigation of the independent expenditure claims. Plaintiff represents that approximately half of the time expended was spent on the independent expenditure claim and half of its opening brief on its first appeal was devoted to argument on the independent expenditure claim. (Bopp Decl. ¶ 28.) As such,

24

1  plaintiff requests fees for fifty percent of the hours worked on
2  the litigation prior to the first appeal.  (Id.)

3       The court has reviewed the underlying record, the
4  declarations of counsel, and the relevant time/rate sheets
5  submitted by plaintiff.  The court finds that plaintiff's
6  proposed reduction of fifty percent of the hours worked on the
7  litigation prior to the first appeal is reasonable and supported
8  by both the law and the facts.  (See Appendix A.)

9            **2.   Issues Litigated Prior to the Second Appeal**

10       After the Ninth Circuit's first remand order in 2003, the
11  issues in this litigation were narrowed to (1) whether the
12  California had a compelling informational interest in its laws
13  relating to ballot-measure advocacy; and (2) whether the current
14  regulations were narrowly tailored to that interest.  Both of
15  these issues were based upon the constitutionality of the laws
16  addressing ballot-measure advocacy.  As such, plaintiff's
17  surviving claims were based on related legal theories, and the
18  court cannot treat those claims as distinct; rather, it must
19  "focus on the significance of the overall relief obtained by the
20  plaintiff in relation to the hours reasonably expended on the
21  litigation."  Hensley, 461 U.S. at 435.

22       In its second remand order, the Ninth Circuit held that
23  defendants had met their burden of demonstrating that California
24  has a compelling interest in the disclosure of funding sources
25  for express ballot measure advocacy; and that the definition of
26  "contribution" is narrowly tailored to that compelling interest.
27  Randolph, 507 F.3d at 1183-87.  However, the Ninth Circuit held
28  that the PRA's imposition of the "full panoply of regulations

                                  25

that accompany status as a political committee under the Act,"
was not narrowly tailored. Id. at 1187-89. As such, the PRA's
disclosure provisions were upheld, and the Ninth Circuit held
that CPLC may be required to disclose contributions as defined by
the PRA. Id. at 1189. However, CPLC is not required to comply
with the additional political committee-like requirements set
forth in the PRA. Id. at 1189-90.

The court finds that the results achieved by plaintiff as a
result of its second appeal were excellent. While it may be
required to disclose contributions, plaintiff obtained a
permanent injunction against the state with respect to
enforcement of the full-panoply of political-committee like
requirements. See Hensley, 461 U.S. at 435 n.11. ("Nor is it
necessarily significant that a prevailing plaintiff did not
receive all the relief requested."). Therefore, the court does
not reduce plaintiff's requested fees based upon partial or
limited success obtained in the second appeal.[10]

/////

/////

_____

[10]     Defendants assert that the court should discount
attorneys' fees by a fraction, applying the same percentage of
reduction to claims litigated prior to the first appeal as to
those litigate prior to and after the second appeal.
Specifically, defendants assert that at least ninety percent of
the hours requested by plaintiff should not be compensated for
because only ten percent of the briefs submitted to the Ninth
Circuit on the second appeal were devoted to the issue on which
plaintiff ultimately prevailed. However, the court finds that
this methodology fails to take into account (1) the actual time
spent on the distinct issue in the first appeal; (2) that
plaintiff's claims litigated after the first appeal were based
upon related legal theories; and (3) that plaintiff's ultimate
result obtained after the second appeal was substantial. As such
the court rejects the application of defendants' proposed
methodology.

1   **D.   Exclusion of Hours**

2        When evaluating a request for attorneys' fees, the court

3   must exclude hours that it deems were not reasonably expended.

4   <u>Hensley</u>, 461 U.S. at 434.   The court has reviewed the hours

5   submitted by plaintiff, and has excluded hours for work that it

6   deems were excessive, redundant, or otherwise unnecessary.   (<u>See</u>

7   Appendix A, B.)

8   **E.   Costs**

9        Pursuant to Local Rule 54-292(b), plaintiff had ten days

10  after entry of judgment, on March 12, 2008, to request costs as

11  the prevailing party.   Plaintiff failed to do so.   Rather,

12  plaintiff included its request for costs in its motion for

13  attorney fees, filed April 11, 2008.   Plaintiff also included

14  expenses in its itemized list for "costs."[11]

15       In light of the complex and on-going nature of the

16  litigation, the court will consider plaintiff's belated requests

17  for costs.   <u>Harris</u>, 24 F.3d at 20 n.4 (noting that a party's

18  failure to comply with the timely filing requirement set forth in

19  the local rule "does not oust the district court's jurisdiction"

20  to consider the belatedly filed request for costs).   The court

21  has reviewed plaintiff's requested costs and expenses, excluding

22  those costs and expenses attributable to appeal as well as those

23  that are unreasonable, unclear, or duplicative.   (<u>See</u> Appendix A,

24  B).

25

26       [11]   Defendant does not dispute that plaintiff can recover
    "as part of the award of attorney's fees those out-of-pocket
27  expenses that 'would normally be charged to a fee paying
    client.'"   <u>Harris v. Marhoefer</u>, 24 F.3d 16, 19 (9th Cir. 1994)
28  (quoting <u>Chalmers v. City of Los Angeles</u>, 796 F.2d 1205, 1216
    n.7).

1  **CONCLUSION**

2      For the foregoing reasons, and as set forth more fully in

3  Appendix A and Appendix B, the court awards attorneys' fees and

4  reasonable costs and expenses to plaintiff as follows:

5      (1)  Bopp, Coleson & Bostrom:      $ 530,059.19[12]

6      (2)  The Ballard Law Practice:     $ 12,652.95[13]

7      (3)  Sweeney & Greene LLP:         $ 7,312.50[14]

8      IT IS SO ORDERED.

9  DATED: September 30, 2008

10

11  _____
    FRANK C. DAMRELL, JR.
12  UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23  _____

24      [12]    This is the sum of the fees and expenses incurred
    during the litigation of the case, including the multiplier,
25  ($431,674.12 x 1.15 = 496,425.23) and the fees and expenses
    incurred during the motion for attorneys' fees ($33,629.96).

26      [13]    This is the sum of local counsel's fees for all hours
    except those relating to the appeal (50.5 hours x $250 per hour =
27  $12,625) and expenses incurred ($27.95).

28      [14]    See Ex. A to Sweeney Decl.

28